1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

## SOUTHERN DISTRICT OF CALIFORNIA

10

11    LINDA ELIZABETH RICCHIO,                    Civil No.      15-0697 BEN (WVG)

12                              Petitioner,

                                                **REPORT AND**
13                                              **RECOMMENDATION RE:**
              vs.                               **GRANTING MOTION TO**
14                                              **DISMISS PETITION FOR WRIT**
                                                **OF HABEAS CORPUS**
15    DEBORAH K. JOHNSON,

16                              Respondents.

17

18    **I.      INTRODUCTION**

19           Petitioner Linda Elizabeth Ricchio, a state prisoner represented by counsel, files

20    this Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, challenging the

21    denial of her parole and denial of her request to advance her parole hearing. (Pet., ECF

22    No. 1.)[1]  The Court has read and considered the Petition [ECF No. 1], the Motion to

23    Dismiss and Memorandum of Points and Authorities in Support of the Motion to

24    Dismiss [ECF No. 9], Petitioner's Opposition to the Motion to Dismiss [ECF No. 17],

25    the lodgments and other documents filed in this case, and the legal arguments presented

26    / / /

27    _____

            [1] Page numbers for docketed materials cited in this Report and Recommendation refer to those
28    imprinted by the Court's electronic case filing system, except for lodgments.

by both parties.  For the reasons discussed below, the Court recommends the Motion to Dismiss be **GRANTED**.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

Ricchio was convicted of murdering Ronald Ruse in 1989.  She received a sentence of twenty-seven years-to-life in prison.  (Pet. at 3.)

On May 11, 2011, the Board of Parole Hearings (BPH) held a hearing to determine whether Ricchio was a good candidate for parole.  (Pet'rs Ex. H.)  At the beginning of the hearing, Ricchio's attorney objected to the Board's use of information from Ricchio's confidential file because he did not have access to the file and because, he contended, material in the file was not true.  (*Id.* at 14-15.)  Ricchio's attorney also objected to the use of information from Ricchio's "chrono" which referenced material in the confidential file, which Ricchio's attorney also contended was untrue.  (*Id.* at 14-16, 22-23.)  Ricchio's attorney noted the District Attorney had access to the confidential file, and that he was therefore at a disadvantage in representing Ricchio.  (*Id.* at 14-16, 20-21.)  The Board denied Ricchio's attorney's request for access to the confidential file, told him they "may or may not be using" the information from the confidential file in their decision, and told him the Board would notify him if it was going to use such information.  (*Id.* at 21.)

During the hearing, the Board heard testimony from Ricchio, reviewed information about her behavior and programming while in prison and the therapy she had undergone while in custody, reviewed a psychological exam by Dr. Pointkowski, and read letters in support of her release.  The Board also considered her plans for parole.  (*See* generally, Pet'rs Ex. H.)  At the conclusion of the hearing, the Board determined she was not suitable for parole at that time.  The Board found that while Ricchio had made a good deal of progress toward accepting responsibility for the murder and gaining insight into herself, she was at the beginning of her process of doing so.  (Petr's Ex. H at 144-46.)  In particular, Presiding Commissioner Prizmich

/ / /

noted Ricchio had not said much about the preparation and planning she had engaged

in leading up to the murder, and had "glossed over" the steps she had taken to do so:

> Your act was a prolonged effort on your part, a focused effort, practicing with the gun, getting someone to help you buy – you know, get the gun and practice. You know, it just went on and on, very focused, which belies someone who's having a momentary anger fit. I mean, this was a prolonged thing. That gave us some concern, that you didn't dwell on that enough.

(*Id.* at 145-56.)

Commissioner Prizmich also noted Ricchio had "focused with criminal intent on

having this person . . . [and] I want to make sure you understand the effort that you went

through, and I don't believe you do at this point." (*Id.* at 148.)  He said:

> I mean, it's chilling, when you think about it, the efforts that you went through. And I didn't get the sense today, in talking to you, that you understand the depth of what you did, nor do I get the sense that you understand, in terms of who you are, how all of this affected you. You are at the very beginning – in my view, and like I said, I've done a bunch of these – of going through this process. It was difficult at times to pull out of you things like how deep your insight was or deep your understanding of self-help programming. For example, we were talking about one area, and what came up was you felt you were codependent. I mean, that's your call. You're the one that has to make that assessment. But to draw from you that programmized commentary, which is, "I'm codependent," what does that mean? I mean, I know what it means, or at least I have an idea. It took me a number of other questions to draw that out of you. Now, you got there. My experience is, when someone has an understanding and had adequate and deep insight, they don't use terms like, "I was codependent." They explain it right off the bat. They provide us with an explanation of what that codependency was. Now, you finally got around to it, but it wasn't without my efforts to try to draw you out of it. So, I mean, that's indicative of very recent understanding of the issues that you grew up with and the character defects that you were left with and the process that you are just beginning to go through, to not only identify those character defects, to rebuild them, to find a better way to handle things.

(*Id.* at 150-51.)

The Board also considered Ricchio's relationship, and subsequent marriage to,

a former prison guard, as well as an incident in which Ricchio was alleged to have been

"infatuated with an officer" and had attempted to obtain confidential information about

him. (*Id.* at 81-82,152.)  Because the behavior was similar to behavior exhibited during

Ricchio's commission of the crime, it concerned the Board. (*Id.* at 83.)  In response,

Ricchio alleged it was the guard, not her, who had been guilty of "sexual impropriety." (*Id.* at 81-82, 152.) Ricchio's attorney also objected to the Board's consideration of the information about the alleged infatuation with the guard because it was from the confidential file to which he had no access, and because the information had been proven false. (*Id.* at 84-85.) In addition, the Board considered a psychological evaluation which found Ricchio had a low likelihood of recidivism, but that she still lacked some insight into the causes and roots of her behavior. (*Id.* at 74-79.)

Ricchio filed a habeas corpus petition in San Diego Superior Court challenging the Board's denial of parole on October 19, 2011. (Lodgment No. 1.) She alleged the Board's decision was not supported by sufficient evidence, the Board's continuing denial of parole based on unchanging factors violated her due process rights, the Board's decision to set her next parole hearing in seven years was arbitrary, and her due process rights were violated by the Board's use of confidential material, its refusal to permit her attorney access to the confidential material, permitting the District Attorney to ask her questions at the hearing, permitting the victim's next of kin to speak, and the presence of a Board member who was a friend of the victim's sister. (*Id.*) The superior court denied the petition on December 21, 2011, finding the BPH relied upon sufficient evidence in denying Ricchio parole. (Lodgment No. 2.) The court also noted that although the Board considered the confidential material, the material did not play a substantial role in the Board's decision. (*Id.* at 5.)

Ricchio then filed a petition for writ of habeas corpus in the California Court of Appeal on January 26, 2012, challenging her parole denial on the same grounds. (Lodgment No. 3.) Citing California law, the appellate court denied the petition on February 28, 2012, finding the BPH's denial of parole was supported by "some evidence," which is all that is required. (Lodgment No. 4.)

On March 14, 2012, Ricchio filed a petition to the BPH to advance her parole hearing. (Pet'rs Ex. B.) She then filed a habeas corpus petition in the California Supreme Court on March 24, 2012, in which she again challenged her denial of parole

on the same grounds as she had in her superior and appellate court petitions. (Lodgment No. 6.)  On March 29, 2012, while her habeas corpus petition was pending in the California Supreme Court, Ricchio settled a federal lawsuit she had filed in the United States District Court for the Eastern District of California regarding her confidential prison file.  (Pet'rs Ex. A at 2.)  As part of the settlement agreement, the parties agreed that several documents were to be redacted or expunged from her file, including material from the confidential file which referenced her alleged infatuation with a guard, her alleged attempt to garner confidential information about that guard, and a psychological report prepared by Dr. Pointkowski.  (*Id.*; Pet'rs Exs. I-J.)  Also on March 29, 2012, Deputy Attorney General Gretchen K. Buechsenschuetz wrote a letter urging the advancement of Ricchio's next parole suitability hearing.  (Pet'rs Ex. C.)  On March 30, 2012, the BPH denied both Ricchio's petition and Ms. Buechsenschuetz's request to advance her parole hearing date.  (Pet'rs Ex. D.)

Ricchio constructively filed a habeas corpus petition in the San Diego Superior Court on June 2, 2012, challenging the denial of her petition to advance her parole hearing date.  (Lodgment No. 8.)  The superior court ordered informal briefing from respondent.  (*See* Lodgment No. 9.)  Meanwhile, the California Supreme Court denied Ricchio's habeas corpus petition challenging her 2011 parole denial (filed March 24, 2012) on June 20, 2012.  (Lodgment No. 7-8.)  While her June 2, 2012 habeas corpus petition was pending in the San Diego Superior Court, Ricchio filed a habeas corpus petition pursuant to 28 U.S.C. § 2254 in the United States District Court for the Eastern District of California challenging her 2007 and 2011 parole denials on grounds the BPH considered inaccurate information in denying her parole and violated her due process rights by denying parole based on insufficient evidence.  (Lodgment No. 23.)  Ricchio also challenged the constitutionality of California's Proposition 9.  (*Id.*)  The Eastern District dismissed her petition on November 21, 2012.  The court concluded her claim regarding the use of inaccurate information was not ripe because at the time of her 2011

parole hearing, Ricchio's federal lawsuit had not yet been settled and documents had

not yet been ordered redacted or expunged from her file.  The court found as follows:

> Petitioner's latest parole hearing took place in 2011, and the civil rights action settlement agreement did not occur until 2012; thus, is it clear that at the time the Board of Parole Hearings conducted the 2011 hearing there was no settlement agreement to expunge and/or redact certain information from Petitioner's central file.  In this instance, the Court finds Petitioner would not be subject to "hardship" if review is delayed because she can re-file a new habeas corpus petition if and when the Board of Parole Hearings continues to rely on information that was expunged and/or redacted from her central file, which has not yet occurred.  Second, judicial intervention at this juncture could interfere with the Board of Parole's future action in response to Deputy California Attorney General, Gretchen Buechsenschuetz's request to advance a new parole suitability within a reasonable time without reliance on the expunged and redacted information and its response thereto.  As Petitioner specifically states, she is still in the process of expunging information from her central file and Petitioner has not alleged or demonstrated that CDCR has declined to conduct a new suitability hearing without reference to the expunged and redacted information.  (Petition, at 24.)  Third, the Court would benefit from future factual development of the issues presented such as a determination of what information was specifically redacted from Petitioner's central file and how that impacts the Board of Parole's finding of suitability for release.

(*Id.* at 3-4.)

The court also concluded the claim was unexhausted.  (*Id*. at 4-6; Lodgment No. 24.)  As to Ricchio's claim that there was not sufficient evidence presented to support the denial of parole, the court, citing *Swarthout v. Cooke*, __ U.S. __, 131 S. Ct. 859 (2011), found that '[federal courts'] review of parole determinations is limited to whether the 'minimal' procedural protections set forth in *Greenholtz [v. Inmates of Neb. Penal*, 442 U.S. 1 (1979)] were met, that there is 'an opportunity to be heard and a statement of the reasons why parole was denied.'  *Id.* at 862," and concluded those protections had been provided to Ricchio. (Lodgment No. 23 at 6-7; Lodgment No. 24.)  The court also rejected Ricchio's challenge to Proposition 9. (Lodgment No. 23 at 7-9; Lodgment No. 24.)[2]

/ / /

---

[2] The Court also told Ricchio that she could not challenge her 2007 and 2011 parole denials in a single habeas corpus proceeding.

On December 6, 2012, the San Diego Superior Court denied Ricchio's habeas corpus petition, filed June 2, 2012, challenging the denial of her petition to advance her parole hearing. (Lodgment No. 9.)  Ricchio then constructively filed a habeas corpus action in the California Court of Appeal challenging the denial of her petition to advance her parole hearing on December 24, 2012. (Lodgment No. 10.)  The appellate court issued an Order to Show Cause and appointed counsel for Ricchio on February 14, 2013. (Lodgment No. 11.)  Counsel filed a supplemental habeas corpus petition in the appellate court on September 4, 2013. (Lodgment No. 12.)  In that petition, counsel argued: (1) the BPH relied on expunged and redacted information to deny Ricchio parole in 2011, and without that evidence, there was not sufficient evidence to support the denial; and (2) the BPH's refusal to give Ricchio's attorney access to the confidential file during her 2011 parole hearing violated her due process rights, her Sixth Amendment right to counsel, and her confrontation clause rights. (*Id.*)  On April 2, 2014, the California Court of Appeal denied the petition. (Lodgment No. 13.)  It found that even without the redacted and expunged evidence, the BPH reasonably denied Ricchio's petition to advance her parole hearing:

> [¶] The BPH relied on numerous factors when it made its 2011 decision finding Ricchio unsuitable for parole, including her lack of insight into the causative factors that led to the murder, her minimization of her responsibility for the murder, her lack of credibility in trying to portray her understanding of what led her to commit the crime, and her lack of credibility in accepting complete responsibility for the murder. It noted, for example, that she "glossed over" the "tremendous amount" of planning she engaged in leading up to the murder, including acquiring the gun, engaging in target practice, and moving into an apartment next door to the victim after their relationship ended.  The BPH was also concerned that she testified to an incident in which the victim struck her with a towel without mentioning that "one of the things that prompted all of that . . . was [Ricchio's] constant harassment" of the victim, suggesting she might be trying to mitigate her actions.  Her other testimony at the BPH hearing additionally suggested she still partially minimized her responsibility, because she claimed she shot the victim when "[h]e was coming at me, either with a grocery bag or a lunge," "[i]t startled me," and she responded by shooting him.  She had elsewhere explained her basis for fearing the victim, noting he had "threatened to have me killed" and been "physically violent" toward her.  She also claimed at the hearing that, after firing numerous shots at him, she "knelt down and . . . touched him," and the BPH expressed doubt over the veracity of her claim that she "checked on him" because there was "no indication of that," which "gives us concern"

about "how honest you're being with us [b]ecause this is very contradictory [of] what we see the facts to be." The BPH was also concerned that she had only a superficial understanding of how childhood abandonment issues contributed to her desire to hang onto the victim, since she claimed to understand how abandonment issues contributed to her crime, but characterized her upbringing as "pretty good" even though her parents in effect abandoned her when she was young. The BPH also questioned the degree to which she understood her codependency issues because Ricchio, rather than responding to the BPH's questions about codependency by "explain[ing] it right off the bat" and giving an "explanation of what codependency was," gave a "programmized" statement that she was a codependent and only elaborated after the BPH asked her numerous questions trying to "draw that out of you." Finally, the BPH was concerned about statements suggesting she continued to attribute some blame to the victim, and stated Ricchio needed to "come to grips with you and what you did, and blaming or shifting focus to someone else . . . is again indicative of not having adequately come to grips with this, not certainly having adequate remorse or insight into it."

(Lodgment No. 13 at 14-16.)

The appellate court also found Ricchio's claim that insufficient evidence supported her 2011 parole denial was successive pursuant to *In re Clark*, 5 Cal. 4th 750, 767-68 (1993). (*Id.* at 13-14.) Moreover, the court concluded Ricchio's claims regarding denial of her right to counsel and the violation of her confrontation clause rights were also barred under *Clark*. (*Id.* at 6, n.4.)

Ricchio's counsel next filed a petition for review in the California Supreme Court on May 15, 2014. (Lodgment No. 14.) In that petition, Ricchio alleged her due process right to a fair parole hearing was violated when the BPH used expunged and redacted material to deny her parole, the state appellate court improperly applied *Clark* to her claims, the reasons given by the BPH to deny her parole were insufficient, and Ricchio was denied her federal due process by the state's improper application of state law. (Lodgment No. 14.) The California Supreme Court summarily denied the petition on June 25, 2014. (Lodgment No. 15.)

On August 5, 2014, Ricchio constructively filed another *pro se* habeas corpus petition in the San Diego Superior Court. (Lodgment No. 16.) She raised new claims, including violations of her Eighth and Fourteenth Amendment rights as a result of: (1) the BPH's refusal to advance her parole hearing; (2) the Attorney General's reliance on

redacted and expunged information in arguing for denial of her petition; and (3) the federal court's reliance on redacted and expunged information to deny her petition. (Lodgment No. 16.)  The superior court denied the petition on October 14, 2014, on grounds it was successive under *Clark*.  (Lodgment No. 17.)

Ricchio next filed a *pro se* habeas corpus petition in the California appellate court on December 2, 2014.  (Lodgment No. 18.)  In that petition, she alleged she was being retaliated against for filing legal actions regarding her prison file and that her Fourteenth Amendment rights were violated by disparate sentencing.  (*Id.*)  The state appellate court denied that petition on December 16, 2014, finding Ricchio had not made a *prima facie* case for relief.  (Lodgment No. 19.)

Ricchio filed her final state habeas corpus petition on January 27, 2015, in *pro se*.  (Lodgment No. 20.)  In that petition, Ricchio again alleged she was denied due process when her attorney was denied access to her confidential file at the 2011 parole hearing, and that the BPH relied on redacted and expunged information to deny her parole in 2011.  (*Id.*)  The California Supreme Court denied the petition stating: "The petition for writ of habeas corpus is denied.  (*See In re Clark* (1993) 5 Cal. 4th 750, 767-769; *People v. Duvall* (1995) 9 Cal.4th 464, 474; *In re Swain* (1949) 34 Cal.2d 300, 304; *In re Miller* (1941) 17 Cal.2d 734, 735.)"  (Lodgment No. 21.)

Ricchio filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 in this Court on March 30, 2015 [ECF No. 1].  Respondent filed a motion to dismiss the petition on June 19, 2015 [ECF No. 9].  Ricchio filed an opposition to the motion to dismiss on July 24, 2015 [ECF No. 17].

## III.   DISCUSSION

Ricchio contends her due process right to a fair parole hearing was violated by the Board's use of material in a confidential file which was later redacted or expunged. Ricchio also argues her Sixth Amendment rights to counsel and effective assistance of counsel were violated by the Board's refusal to provide her attorney access to the / / /

15cv0697

confidential file.  In addition, Ricchio argues her due process rights were violated by the denial of her petition to advance her parole hearing.  (Pet. at 1-39.)

Respondent contends Ricchio's claims are successive and time barred.  (Mot. to Dismiss at 15-18.)  Respondent also contends her confrontation clause and Sixth Amendment right to counsel claims are unexhausted and procedurally defaulted.  (*Id.* at 18-20.)  Respondent further argues Ricchio does not state a federal claim with regard to whether the state court properly applied a state procedural bar to her case.  (*Id.* 20-21.)  Finally, Respondent contends Ricchio's challenge to the denial of her petition to advance her parole date is not cognizable on federal habeas review.  (*Id.* at 22-23.)

A.  *Standard of Review*

This Petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  *See Lindh v. Murphy*, 521 U.S. 320 (1997).  Under AEDPA, a habeas petition will not be granted with respect to any claim adjudicated on the merits by the state court unless that adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding.  28 U.S.C. § 2254(d); *Early v. Packer*, 537 U.S. 3, 8 (2002).  In deciding a state prisoner's habeas petition, a federal court is not called upon to decide whether it agrees with the state court's determination; rather, the court applies an extraordinarily deferential review, inquiring only whether the state court's decision was objectively unreasonable.  *See Yarborough v. Gentry*, 540 U.S. 1, 4 (2003); *Medina v. Hornung*, 386 F.3d 872, 877 (9th Cir. 2004).

A federal habeas court may grant relief under the "contrary to" clause if the state court applied a rule different from the governing law set forth in Supreme Court cases, or if it decided a case differently than the Supreme Court on a set of materially indistinguishable facts.  *See Bell v. Cone*, 535 U.S. 685, 694 (2002).  The court may grant relief under the "unreasonable application" clause if the state court correctly

15cv0697

identified the governing legal principle from Supreme Court decisions but unreasonably applied those decisions to the facts of a particular case. *Id.* Additionally, the "unreasonable application" clause requires that the state court decision be more than incorrect or erroneous; to warrant habeas relief, the state court's application of clearly established federal law must be "objectively unreasonable." *See Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). The Court may also grant relief if the state court's decision was based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d)(2).

Where there is no reasoned decision from the state's highest court, the Court "looks through" to the underlying appellate court decision and presumes it provides the basis for the higher court's denial of a claim or claims. *See Ylst v. Nunnemaker*, 501 U.S. 797, 805-06 (1991). If the dispositive state court order does not "furnish a basis for its reasoning," federal habeas courts must conduct an independent review of the record to determine whether the state court's decision is contrary to, or an unreasonable application of, clearly established Supreme Court law. *See Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000) (overruled on other grounds by *Andrade*, 538 U.S. at 75-76); *accord Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). However, a state court need not cite Supreme Court precedent when resolving a habeas corpus claim. *See Early*, 537 U.S. at 8. "[S]o long as neither the reasoning nor the result of the state-court decision contradicts [Supreme Court precedent,]" *id.*, the state court decision will not be "contrary to" clearly established federal law. *Id.* Clearly established federal law, for purposes of § 2254(d), means "the governing principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Andrade*, 538 U.S. at 72.

B. *Whether the Petition is Successive*

Respondent contends Ricchio's claims regarding her 2011 parole hearing are successive because she has already challenged her 2011 parole denial in the Eastern

/ / /

/ / /

11

1  District, case no. 12cv1318 LJO (DLB), and the claim was decided on the merits. (Mot.

2  to Dismiss at 15-16.)  28 U.S.C. 2244(a) §§ (a) and (b)(3)(A) state:

3           (a) No circuit or district judge shall be required to entertain an
         application for a writ of habeas corpus to inquire into the detention of a
4        person pursuant to a judgment of a court or the Untied States if it appears
         that the legality of such detention and has been determined by a judge or
5        court of the United States on a prior application for a writ of habeas
         corpus, except as provided in section 2255.
6
                                    . . . .
7
             (b)[(3)(A)] Before a second or successive application permitted by
8        this section is filed in the district court, the applicant shall move in the
         appropriate court of appeals for an order authorizing the district court to
9        consider the application.

10 28 U.S.C. § 2244(a), (b)(3)(A) (West 2006).

11      In 2012, Ricchio challenged her 2011 parole denial hearing in the United States

12 Court for the Eastern District of California on the following grounds:  (1) the BHP

13 violated her right to due process when it relied on false information to deny her parole

14 at the 2011 hearing; (2) the BPH violated her right to due process when it relied on

15 material in her confidential file to deny parole; and (3) the BPH denied her substantive

16 due process rights by refusing to apply ex post facto principles to her case. (*See Ricchio*

17 *v. Board of Parole Hearings*, 12cv1318 LJO-DLB (HC) (E.D. Cal.).)[3]  Thus, to the

18 extent Ricchio is again challenging her 2011 parole denial because her due process

19 rights to a fair parole hearing were violated, she was denied her right to counsel, denied

20 the effective assistance of counsel, and denied her Sixth Amendment Confrontation

21 Clause rights, she is seeking to challenge the same proceeding she challenged in her

22 prior federal habeas petition.  Unless Ricchio can show she has obtained an Order from

23 the appropriate court of appeals authorizing the district court to consider a successive

24 petition, the petition may not be filed in the district court.  *See* 28 U.S.C. §

25 2244(b)(3)(A).  Here, there is no indication the Ninth Circuit Court of Appeals has

26 granted Petitioner leave to file a successive petition, and thus the Court recommends her

27

28      [3] Ricchio also sought to challenge her 2007 parole denial hearing in the Eastern District case,
    but that is not the subject of her petition in this Court.

                                        12

claims regarding her 2011 parole hearing be dismissed.  *See* 28 U.S.C. § 2244 (a), (b)(3)(A).

C. *Whether the Petition is Time Barred*

Respondent also contends Ricchio's petition is time barred by AEDPA's statute of limitations.  (Mot. to Dismiss at 16-18.)  Under 28 U.S.C. § 2244(d), petitioner has one year from the date his or her conviction is final to file a petition for writ of habeas corpus in federal court pursuant to 28 U.S.C. § 2254.  *See* 28 U.S.C. § 2244(d).  The statute of limitations, however, is subject to both statutory and equitable tolling.  *See* 28 U.S.C. § 2244(d)(1); *Calderon v. United States Dist. Court (Beeler)*, 128 F.3d 1283, 1288 (9th Cir. 1997), *overruled on other grounds by Calderon v. United States Dist. Court (Kelly)*, 163 F.3d 530, 540 (9th Cir. 1998).

1.   Commencement of the One-Year Statute of Limitations

The Ninth Circuit has held that AEDPA's one-year statute of limitations applies to administrative decisions such as challenges to a state parole board denial.  *See Redd v. McGrath*, 343 F.3d 1077, 1084-85 (9th Cir. 2003).  Since a parole denial is not a "judgment of a state court," subsection (d)(1)(D) of 28 U.S.C. § 2244 is the applicable section for calculating when the statute of limitations begins to run.  *Id.* at 1082-83 (9th Cir. 2003).  That section states the limitations period runs from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence."  28 U.S.C. § 2244(d)(1)(D).

Respondent argues the factual predicate of Ricchio's claims could have been discovered through the exercise of due diligence when the Board's May 11, 2011 decision became final on **September 8, 2011**.  *See* Cal. Penal Code § 3041(b) (Board of Parole Hearings decisions become final 120 days after the date of the hearing).  An argument can be made, however, that Ricchio discovered the factual predicate of her claims through the exercise of due diligence on **March 29, 2012**, when her federal lawsuit regarding specific materials in her confidential file was settled and those materials were ordered expunged or removed.  *See* 28 U.S.C. § 2244(d)(1)(D).

13

15cv0697

Although the result is the same, this Court will analyze the timeliness of Ricchio's federal petition under both dates.

In her opposition, Ricchio contends that AEDPA's statute of limitations began running when she completed exhaustion of her claims in state court on June 25, 2014. (Opp'n at 4.)  As discussed below in section III(C)(2), however, Ricchio is entitled to some statutory tolling, but not for the entire period while she was pursuing remedies in state court.

2.     Statutory Tolling

28 U.S.C. § 2244(d)(2) provides that "[t]he time during which a properly filed application for State post-conviction or other collateral review . . . is pending shall not be counted toward any period of limitation under this subsection."   28 U.S.C. § 2244(d)(2).  The Supreme Court has stated that "an application is pending as long as the ordinary state collateral review process is 'in continuance' – i.e., 'until the completion of' that process." *Carey v. Saffold*, 536 U.S. 214, 219-20 (2002).  This includes the time during which a petition is being considered by a state court and, generally speaking, the time between filings (gap tolling), unless the petitions filed in the state courts were untimely or successive. *See Porter v. Ollison*, 620 F.3d 953, 958 (9th Cir. 2010); *see also Evans v. Chavis*, 546 U.S. 189, 199-200 (2006).

a. Scenario One

If the statute of limitations began running when the BPH's decision became final, Ricchio is entitled to statutory tolling for the period her first round of state court petitions challenging her parole denial were pending.  From September 8, 2011 (the date the Board of Parole Hearings' decision became final) to June 20, 2012, (the date the California Supreme Court denied her first petition) (**286 days**), the statute of limitations was tolled because none of those petitions were denied as untimely or successive, and all were filed within a reasonable time period, which the Supreme Court has noted is 30 to 60 days. *Evans*, 546 U.S. at 199-201 (citing *Saffold*, 536 U.S. at 222-23).

14

Ricchio is entitled to additional statutory tolling for the period her second habeas corpus petition was pending in the San Diego Superior Court because that petition was not denied as successive, but rather on the merits. (*See* Lodgment No. 9.)  Ricchio's second San Diego Superior Court petition was filed on June 2, 2012, (while Ricchio's first petition was still pending in the California Supreme Court) and was not decided until December 6, 2012.  Accordingly, from June 20, 2012 (the date the California Supreme Court decided her first habeas corpus petition) to December 6, 2012, (the date the San Diego Superior Court decided her second petition) (**169 days**), the statute of limitations was tolled.  Therefore, Ricchio is entitled to a total of **455 days** of statutory tolling (**286 days** plus **169 days**).

Ricchio is not entitled to any additional statutory tolling because all subsequent state habeas corpus petitions were denied as successive and were thus not "properly filed." (*See* Lodgment Nos. 13, 15, 17, 19, 21; *Porter*, 620 F.3d at 958.)  A total of **1299 days** have passed from September 8, 2011 (the date the statute of limitations began running) to March 30, 2015 (the date she filed her instant federal habeas corpus petition).  As noted above, Ricchio is entitled to **455 days** of statutory tolling during that time period.  Thus, a total of **844 days** have passed (**1299** days minus **455 days**) without any statutory tolling.  Applying AEDPA's one-year statue of limitations, Richhio's federal habeas corpus petition is **479 days** late (**844 days** minus **365 days**).

### b. Scenario Two

In the alternative, if the statute of limitations began running on March 29, 2012, when her federal lawsuit regarding her confidential file was settled, she is still only entitled to statutory tolling for the period her "properly filed" state habeas corpus petitions were pending.  On March 29, 2012, Ricchio had a "properly filed" habeas corpus petition pending in the California Supreme Court (the first petition). (Lodgment No. 6.)  From March 29, 2012 (the date her federal lawsuit regarding her confidential file was settled) to June 20, 2012, (the date the California Supreme Court denied her first petition) (**83 days**), the statute of limitations was tolled.  28 U.S.C. § 2244(d)(2).

While her first petition was pending in the California Supreme Court, she constructively filed a second habeas corpus petition in the San Diego Superior Court, which was denied on December 6, 2012. (Lodgment Nos. 8-9.) From June 20, 2012 (the date the California Supreme Court denied her first petition) to December 6, 2012 (the date the superior court denied her second habeas corpus petition) (**169 days**), the statute of limitations was tolled. Therefore, Ricchio is entitled to a total of **252 days** of statutory tolling (**83 days** plus **169 days**).

Ricchio is not entitled to any additional statutory tolling because all subsequent state habeas corpus petitions were denied as successive and were thus not "properly filed." (*See* Lodgment Nos. 13, 15, 17, 19, 21; *Porter v. Ollison*, 620 F.3d 952, 958 (9th Cir. 2010). A total of **1096 days** have passed from March 29, 2012 (the date the statute of limitations began running) to March 30, 2015 (the date she filed her instant federal habeas corpus petition). As noted above, Ricchio is entitled to **252 days** of statutory tolling during that time period. Thus, a total of **844 days** have passed (**1096 days** minus **252 days**) without any statutory tolling. Applying AEDPA's one-year statute of limitations, Ricchio's federal habeas corpus petition is **479 days** late (**844 days** minus **365 days**).

### 3.   Equitable tolling

"To be entitled to equitable tolling, [Petitioner] must show '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Lawrence v. Florida*, 549 U.S. 327, 336-37 (2007), quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). Equitable tolling is unavailable in most cases, and "the threshold necessary to trigger equitable tolling is very high, lest the exceptions swallow the rule." *Miranda v. Castro*, 292 F.3d 1063, 1066 (9th Cir. 2002).

Ricchio has not alleged she is entitled to equitable tolling, nor are there any facts in the record before the Court which would appear to entitle her to such tolling. The Court therefore concludes Ricchio's challenge to her 2011 parole denial is untimely,

and recommends those claims must be dismissed with prejudice under 28 U.S.C. § 224(d).

D. *Exhaustion and Procedural Default*

Respondent argues Ricchio's Sixth Amendment Confrontation Clause and right to counsel claims are not exhausted because they have never been fairly presented to the California Supreme Court. (Mot. to Dismiss at 18-19.) Specifically, Respondent contends that Ricchio's petition for review only argued the state appellate court erroneously applied a successiveness procedural bar to Ricchio's claim that she was deprived of the effective assistance of counsel at her 2011 parole hearing, but did not argue her Sixth Amendment Confrontation Clause rights and right to counsel were violated. (*Id.*)

To satisfy the exhaustion requirement, a petitioner must "'fairly present[]' his federal claim to the highest state court with jurisdiction to consider it, or . . . demonstrate[] that no state remedy remains available." *Johnson v. Zenon*, 88 F.3d 828, 829 (9th Cir. 1996) (citations omitted). To fairly present a claim so as to satisfy the exhaustion requirement a petitioner must first provide the state courts with a "'fair opportunity' to apply controlling legal principles to the facts bearing upon his [or her] constitutional claim." *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (quoting *Picard*, 404 U.S. at 276-77).

In the supplemental habeas corpus petition counsel filed in the state appellate court, Ricchio argued the failure of the BPH to provide her attorney access to the confidential file deprived her of due process, her confrontation clause rights and her right to counsel under the Sixth and Fourteenth Amendments. (Lodgment No. 12 at 7, 63-67.) The state appellate court denied the petition, and specifically declined to address Ricchio's confrontation clause and right to counsel claims applying the successiveness bar of *Clark*. (Lodgment No. 13 at 5, n. 4.)

In the "Questions Presented" section of the petition for review counsel then filed in the California Supreme Court, Ricchio stated as question no. 1: "Did the Court of

Appeal constitutionally err by refusing to hear the issue that her attorney at her 2011 Board of Parole Hearing (BPH) was denied access to her confidential file on which the BPH relied to deny her parole." (Lodgment No. 14 at 7.)  In the "Necessity for Review" section of the petition for review, she argued her case should be remanded to the appellate court to "decide the issue of denial of the Sixth Amendment right to counsel by the BPH refusing petitioner's counsel access to confidential material on which the BPH was relying and with directions to decide the right to counsel question." (*Id.* at 8.)  Ricchio also asked, in the alternative, that the California Supreme Court decide the Sixth Amendment right to counsel issue on its own.  (*Id.*)  In the body of the petition, Ricchio argued the appellate court erroneously applied the *Clark* procedural bar to her claim that she was denied the effective assistance of counsel, without mentioning the right to counsel or her confrontation clause rights.  (*Id.* at 16-18.)  She also alleged the following:

> [T]he facts underlying her deprivation of counsel fairly jumped off the page of the [Board of Parole Hearings] hearing which was attached . . . [and] her attorney at the 2011 board hearing complained loudly about the denial of the right to counsel which occurred by not letting him have access to [the confidential file].

(Lodgment No. 14 at 17.)

She went on to ask that "[r]eview [be] granted to allow a hearing on the merits of this deprivation of counsel at her BPH hearing."  (*Id.* at 18.)  Nowhere in the petition for review has this Court found a reference to Ricchio's Sixth Amendment Confrontation Clause rights.  In her federal petition, Ricchio presents her Sixth Amendment claims in an argument heading as follows: "The Use of A Confidential File Without Giving Access to that File to Petitioner's Attorney Was A 'Star Chamber' Proceeding Which Deprived Petitioner of Her Constitutional Rights to Confrontation, Due Process and Assistance of Counsel Under the Sixth and Fourteenth Amendments." (Pet. at 33.)

Given the above, the Court cannot conclude Ricchio "fairly presented" her right to counsel claim to the California Supreme Court.  The main thrust of Ricchio's

15cv0697

argument to that court was her contention the appellate court had improperly applied *Clark* to bar consideration of the merits of that claim, not to argue the merits of the claim itself. While Ricchio did ask the state supreme court to, in the alternative, decide the claim on its own, such a throwaway line cannot be considered a "fair presentation" of the claim. There is no reference at all to a claim that her confrontation clause rights were violated in the petition for review filed in the California Supreme Court. The claims are thus unexhausted.

"A claim that has not been fairly presented [to the state's highest court] may also be deemed technically exhausted if the petitioner has defaulted on the claim in state court and no longer has a remedy in that court." *Woods v. Sinclair*, 764 F.3d 1109, 1129 (9th Cir. 2014) (citing *Coleman v. Thompson*, 501 U.S. 722, 732, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)). The Ninth Circuit has held that because procedural default is an affirmative defense, Respondent must first "adequately [plead] the existence of an independent and adequate state procedural ground . . . ." *Bennett v. Mueller*, 322 F.3d 573, 586 (9th Cir. 2003). In order to place the defense at issue, Ricchio must then "assert[] specific factual allegations that demonstrate the inadequacy of the state procedure . . . ." *Id.* The "ultimate burden" of proving procedural default, however, belongs to the state. *Id.* If the state meets its burden under *Bennett*, federal review of the claim is foreclosed unless Ricchio can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.

A state procedural rule is "independent" if the state law basis for the decision is not interwoven with federal law. *Michigan v. Long*, 463 U.S. 1032, 1040-41 (1983); *Harris v. Reed*, 489 U.S. 255, 265 (1989). A ground is "interwoven" with federal law if the state has made application of the procedural bar dependent on an antecedent ruling on federal law such as the determination of whether federal constitutional error has been committed. *See Ake v. Oklahoma*, 470 U.S. 68, 75 (1985). "To qualify as an

15cv0697

'adequate' procedural ground, a state rule must be 'firmly established and regularly followed'." *Walker v. Martin*, 562 U.S. 307, 316 (2011) (quoting *Beard v. Kindler*, 558 U.S. 60-61 (2009).)

Respondent cites to *Walker* as support for her contention the successiveness bar of *Clark* is independent and adequate. (*See* Answer at 20.)  *Walker*, however, concluded only the timeliness bar of *Clark* was independent and adequate. *Walker*, 562 U.S. at 131 S. Ct. at 1127-30.)  Nevertheless, although neither the Supreme Court nor the Ninth Circuit have ruled on whether the *Clark* successiveness bar is independent and adequate, several California District Courts have.  *See Throop v. Diaz*, 2015 WL 847445, *5 (S.D. Cal. Feb 26, 2015); *Bucci v. Busby*, 2014 WL 4249669, *12 (E.D. Cal. Aug. 26, 2014); *Ray v. Cate*, 2014 WL 3831214, *15 (N.D. Cal.  Aug. 4, 2014); *Stoot v. Gipson*, 2014 WL 1364903, *6 (C.D. Cal. Jan. 23, 2014); *Rutledge v. Katavich*, 2012 WL 2054975, *7 (N.D. Cal. June 5, 2012) (California's procedural rule against successive petitions bars federal habeas review); *Arroyo v. Curry*, 2009 WL 723877, at *4-6 (N.D. Cal. Mar. 18, 2009). This Court find the reasoning in those cases persuasive, adopts the reasoning of these decisions, and finds that *In re Clark* constitutes an independent and adequate state procedural ground for the California Supreme Court's denial of Petitioner's claims, barring federal habeas review.  The burden therefore shifts to Ricchio to establish the rule is not independent or adequate. *Bennett*, 322 F.3d at 586.  She has not presented any evidence or argument demonstrating the rule is not independent or adequate.  Accordingly, she has failed to meet her burden under *Bennett*.  *Id.*

Ricchio has also not established either cause or prejudice sufficient to excuse the default.  Cause is satisfied if Ricchio can demonstrate some "objective factor" that precluded her from raising her claims in state court, such as interference by state officials or constitutionally ineffective counsel. *McClesky v. Zant*, 499 U.S. 467, 493-94 (1991). While Ricchio alleges the Board's actions denied her the effective assistance of counsel, her right to counsel, and her confrontation clause rights at her parole

hearing, she has not established that ineffective assistance of counsel or any other "objective factor" prevented her from raising those claims in state court and avoiding default.

"Prejudice [sufficient to excuse procedurally barred claims] is actual harm resulting from the alleged error." *Vickers v. Stewart*, 144 F.3d 613, 617 (9th Cir. 1998). The possibility of prejudice is not enough. The error, in this case, the denial of counsel, effective assistance of counsel, and denial of the right of confrontation, "worked to [Ricchio's] actual and *substantial* disadvantage, infecting [the] entire [proceeding] with error of constitutional dimensions." *Murray v. Carrier*, 477 U.S. 478, 494 (1986) quoting *United States v. Frady*, 456 U.S. 152, 170 (1982) (internal quotations omitted). Such is not the case here. While the BPH did consider evidence from the confidential file later ordered redacted or expunged by the federal court, its decision rested heavily on Ricchio's failure to make adequate progress toward accepting responsibility for the murder, the fact that she was only at the beginning of the process of gaining insight into herself and what led her to commit Ruse's murder, her "glossing over" of her extensive stalking of Ruse prior to the murder, and the preparation and planning of the murder. (Petr's Ex. H at 144-46, 145-56.) Thus, Ricchio has shown only the possibility of prejudice, that is, only a possibility that her attorney's lack of access to the confidential file at the parole hearing "worked to [her] actual and substantial disadvantage." *Murray*, 477 U.S. at 494.

Finally, Ricchio has also not demonstrated that failure to consider the claims will result in a fundamental miscarriage of justice. *See Coleman*, 501 U.S. at 750. The Supreme Court has limited the "miscarriage of justice" exception to petitioners who can show that "a constitutional violation has probably resulted in one who is *actually* innocent." *Schlup v. Delo*, 513 U.S. 298, 327 (1995) (emphasis added). "Actual innocence" means factual innocence, not simply legal insufficiency; a mere showing of reasonable doubt is not enough. *See Wood v. Hall*, 130 F.3d 373, 379 (9th Cir. 1997). Although Ricchio argues there were errors committed at her parole hearing, she has not

presented evidence sufficient to establish she is actually and factually innocent of the charges of which she was convicted, or that she would have been granted parole absent the errors.  Thus, the claims are procedurally defaulted.  *Schlup*, 513 U.S. at 327; *Cooper*, 641 F.3d at 327.[4]

### E.   *Ricchio's Challenge to the Denial of Her Petition to Advance Her Parole Hearing Date*

Finally, Respondent argues that Ricchio's challenge to the BPH's denial of her petition to advance her parole hearing, if upheld, would not necessarily result in her speedier release from prison, and therefore there is no federal habeas jurisdiction over the claim.  (Mot. to Dismiss at 22-23.)  Respondent argues the Ninth Circuit's opinion in *Nettles v. Grounds*, 788 F.3d 992 (9th Cir. 2015) settles this issue.  In *Nettles*, a prisoner sought federal habeas relief to expunge a rules violation report from his file, which he said would result in an advanced hearing date.  The Ninth Circuit concluded the claim was not properly brought as a habeas corpus action because, if Nettles won, he would not *necessarily* gain speedier release, but only a new hearing.  *Id.* at 1003. Ricchio argues her case is fundamentally different from *Nettles* because of the false material that was relied upon in denying her parole and because *Nettles* involved a prison disciplinary hearing, not a parole hearing.  (Opp. to Mot. to Dismiss at 7-8.)

No Ninth Circuit case has yet applied *Nettles* to the question of parole suitability. This Court has located only one Court which has considered the question.  *See Ontiveros v. Subia*, 2015 WL 3893236 (E.D. Cal., June 24, 2015).  In *Ontiveros*, the petitioner contended his due process rights were violated by the BPH because the Board was, and remained, biased against him.  *Id.* at *6.  He also argued he was entitled to a new parole hearing "before unbiased decisionmakers."  *Id.*  Respondent argued there

---

[4]  Respondent contends Ricchio's petition raises a claim that *Clark* was not properly applied to Ricchio's case.  (*See* Mot. to Dismiss at 20-21.)  In her Opposition, Ricchio states that this claim is a "non-issue," and was not raised as a separate claim.  In any event, as Respondent notes, the application of *Clark* to Ricchio's claims is a matter of the application of state law.  Federal habeas relief is not available for alleged violations of state law.  *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); see also 28 U.S.C. § 2254(a).

was no subject matter jurisdiction over the petition because any relief granted would not "necessarily accelerate [petitioner's] release from prison." *Id.* at *8. In its analysis, the court noted the Ninth Circuit had very recently decided *Nettles*, and agreed that "petitioner's success on his claim of Board bias cannot be said to 'necessarily' result in his speedier release from prison." *Id.* at 9. The court also noted, however, that *Nettles* had not yet been extended to the parole suitability context and, given the Supreme Court in *Swarthout* affirmed that due process challenges to parole denials are properly brought as federal habeas corpus actions, the most prudent course would be to conclude the Court had federal habeas corpus jurisdiction over Ontiveros's due process challenge to his parole suitability hearing. *Id.* at *10.

*Ontiveros'* reasoning is persuasive to this Court. Moreover, given the fact that material has been ordered expunged and redacted from Ricchio's file, and that no hearing has yet been conducted without reference to that expunged and redacted material, the Court concludes it has subject matter jurisdiction over Ricchio's claim that her due process rights to a fair parole hearing were violated, as well as her challenge to the Board's denial of her petition to advance her next parole hearing. As discussed in section III(C) of this Report and Recommendation, however, the Court concludes the petition is time barred and recommends the motion to dismiss be granted.

## IV.   CONCLUSION

The Court submits this Report and Recommendation to United States District Judge Roger T. Benitez under 28 U.S.C. § 636(b)(1) and Local Civil Rule 72.1(d)(4) of the United States District Court for the Southern District of California.

Further, **IT IS HEREBY RECOMMENDED** that the Court issue an order: (1) approving and adopting this Report and Recommendation, and (2) directing that Judgment be entered **DENYING** the Petition for Writ of Habeas Corpus and request for evidentiary hearing.

15cv0697

**IT IS ORDERED** that no later than **October 9, 2015**, any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **October 23, 2015**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1156 (9th Cir. 1991).

**IT IS SO ORDERED.**

DATED:  September 11, 2015

_____
Hon. William V. Gallo
U.S. Magistrate Judge

24

15cv0697